Gardner *v.* Raisbeck.

GEORGE W. GARDNER

*v.*

GILBERT RAISBECK and others.

A bill for an account and payment of the proceeds of five bonds and mortgages, alleged to have been assigned to the defendant through his importunity and fraud, for sale on commission, the proceeds of which the defendant, after sale, appropriated to his own use, dismissed on account of gross discrepancies between the allegations and proofs in this suit, and also in complainant's sworn answer in a suit in another state, touching the same matters; the assignments appearing on their face to have been made *bona fide* and for value.

Bill for relief. On bill, answer of Raisbeck, replication and proofs.

*Mr. S. B. Ransom,* for complainant.

*Mr. Isaac R. Wilson,* for Raisbeck.

THE CHANCELLOR.

The bill is filed for an account, and decree for payment thereon, for the amount of five bonds, with their respective accompanying mortgages securing the payment thereof, assigned, according to the bill, by the complainant to Raisbeck, in June, 1871, as his agent, for sale for a commission of ten per centum. These securities were received by the complainant for the purchase-money of property, belonging to his deceased brother John, sold under proceedings in New York for partition thereof among the heirs. One of the mortgages was given by a purchaser at the sale; the others were given by George W. Burrell, on the purchase, by him, from the complainant, after that sale, of part of the property, which was bought in by the latter at the sale for the heirs, under an agreement made by him with them. The complainant alleges, in his bill, that being desirous of obtaining the money for the five mortgages, he was induced by the defendant Charles H. Bertrand, who was his lawyer, to put them in the hands of Raisbeck, who pretended to be a real estate agent, to be sold by him for a commission of ten per cent., and that he accordingly requested Raisbeck to sell them for him; that Raisbeck, who, as well as Bertrand, did business in the city of New York, soon afterwards requested him, in view of the fact that he then lived in Connecticut, to assign the bonds and mortgages to him (Raisbeck) in order that he might have the means of immediately delivering them on sale. The bill states that at the time when the assignment was made, the bonds and mortgages were delivered " punctually " into the hands of Bertrand, to be by him delivered to Raisbeck, and that the complainant then gave Bertrand special instructions not to deliver the assignments and the bonds and mortgages until he had received from Raisbeck full and ample security to the com-

plainant for them.   It further states that, at or about the
time when the complainant made the assignments, he asked
Bertrand about the security he (the complainant) was to
receive from Raisbeck, and Bertrand informed him that he
had taken full and adequate security before delivering the
assignments and bonds and mortgages, and that he would
see that Raisbeck accounted for and paid over all the money
to the complainant.   It further alleges, that Raisbeck and
the other defendants (Bertrand and Cook) conspired to cheat
the complainants out of the mortgages; that Raisbeck col-
lected one of the mortgages (known as the Mowatt mort-
gage, and for $1,500) and obtained a conveyance of the
equity of redemption from Burrell of the property covered
by the other four mortgages, and then sold the property,
and that he refuses to account for any of the money, and
that the complainant has received nothing from him on
account of the money due him therefor, except small sums,
amounting to about $550 in all, while the mortgages
amounted to about $25,500.

The complainant alleges, in the bill, that it was not until
after he had made repeated unsuccessful efforts to obtain a
satisfactory explanation from Raisbeck and Bertrand that
he became suspicious that the business was not being prop-
erly conducted, and that he thereupon searched the records
of Kings county, in New York, where the mortgaged prem-
ises were, and found that Raisbeck had not only purchased
the equity of redemption of the Burrell property, but had
subsequently sold and disposed of that property to different
purchasers.

The bill asks for an answer without oath.   Raisbeck
alone answered.   Testimony was taken on the part of the
complainant, but it was only that of himself, his wife and
son and solicitor.   Raisbeck has put in the record of a suit
in the New York supreme court, brought by Charles Gard-
ner, brother of the complainant, against the complainant,
Daniel Gardner (his brother), George W. Burrell, Catharine
M. Flynn (sister of complainant) and Raisbeck and his

wife, in or before July, 1871; and also a bill of accounting, made by the complainant, and sworn to by him, September 23d, 1871, filed, as alleged, in a suit brought by Catharine Flynn against the complainant and his brothers Daniel and Charles.

The testimony on the part of the complainant fails to support the allegations of the bill in material respects. The complainant, indeed, swears that he made the assignments to Raisbeck for the reason given in the bill (to enable him to deliver the bonds and mortgages on sale), but he testifies that he did not deliver the bonds and mortgages until afterwards, and after unsuccessful applications to him by both Raisbeck and Bertrand for them. He says Bertrand first applied some time during the same summer in which he made the assignment, and asked him for the bonds and mortgages; that he refused to let him have them; that Bertrand said he wanted to use them for a few days, and would return them; that, a day or two afterwards, Bertrand and Raisbeck came together to his house, in Chatham, in this state (to which place he had removed from Connecticut, as he says, at Bertrand's suggestion), and stayed all night; that at first they spoke to him before his wife, and said they wanted the bonds and mortgages; that he made no definite reply; that they then called him out of doors alone, and Raisbeck said: " I want those bonds and mortgages; I can't do without them "; that he did not satisfy Raisbeck, and would not let him have them; that Raisbeck said he wanted to use them, but did not say for what purpose; that he did not get them that day, and the next day they went away without them; that the same day (presumably the last-mentioned day) or the next, Bertrand came again, alone, and stayed all night, and the next morning asked him for the bonds and mortgages, saying that he wanted to use them; that the complainant replied that he would not give them to him, that he, the complainant, had no security for them, and could not let them go out of his hands; that Bertrand then threw back his coat and pointed to his breast

pocket, and said: "I've got plenty of security; there it is—government bonds," but did not show any bonds, and that the complainant then said: "If that's the case, if you have got security for them, I'll let you have them," and he then gave them to him, Bertrand promising that he would "see that everything was right." This statement differs very materially from the allegation of the bill in regard to the delivery of the bonds and mortgages to Bertrand. His son's version of the matter is different from his. He says that shortly after his father removed from Connecticut to Chatham, Bertrand visited his father, and he thinks he came after the bonds and mortgages; that Bertrand did not get them at that time, and came again, shortly afterwards, accompanied by Raisbeck; that they stayed all night; that they said they had come after the bonds and mortgages; that he does not remember what reply his father made; that his mother went up stairs and got the papers and gave them to his father, who gave them to Bertrand and Raisbeck; that he does not know of their paying anything for them; that he saw nothing paid, and that he heard nothing said about what was to be done with the papers.

The complainant's wife says that Raisbeck said he wanted the bonds and mortgages in order to get the description of the property from them, and would return them again. But the complainant's answer in the suit brought against him and Raisbeck and Burrell, by his brother Charles, is conclusive against him. That suit was a suit in equity brought against them for relief based on the ground of conspiracy on their part to cheat the complainant's brothers and sister, parties to that action, by means of the assignments of the bonds and mortgages in question in this suit. The plaintiff in that suit expressly alleged that those assignments were made without consideration, and in furtherance of an agreement, between Raisbeck and the complainant in this suit, to cheat the plaintiff in that action, and others, the heirs of the complainant's brother John. To that action, Raisbeck and the com-

plainant in this suit appeared, and not only did the former answer that he bought and received the assignments of the bonds and mortgages and the deed from Burrell, for the equity of redemption, in perfect good faith, for a fair and valuable consideration, and wholly without any notice or knowledge of anything affecting either, but the complainant in this suit answers, on oath, that the assignments were made by him to Raisbeck for valid and full consideration to him paid.

That action resulted in a finding, by the court, that the complainant in this suit assigned the four mortgages (the Burrell mortgages) in question in that suit, to Raisbeck for a good and valuable consideration and without any fraud, collusion or conspiracy with Raisbeck or any person whomsoever, and without any knowledge or information, on the part of Raisbeck, of the existence of the trust on which the complainant in this suit held them (but that he had knowledge that Daniel Gardner and Catharine Flynn had some interest in the proceeds); and that the conveyance, by Burrell, of the equity of redemption, was for a good and valuable consideration and without fraud, collusion or conspiracy, and without any knowledge or information, on the part of Raisbeck, of the existence of any trust affecting Burrell's title to the property; and that Raisbeck had an absolute title in his own right in fee to the property, free from all claim. Raisbeck's claim to the absolute ownership of the Burrell bonds and mortgages was litigated in that suit, and it was established not only with the knowledge but with the aid of the complainant in this suit. It is true, he now says that he did not understand that the answer contained an admission that Raisbeck had paid him for the bonds and mortgages, but obviously he cannot, by this mere statement, avoid the effect of the answer, and he must be held to have understood the very plain admission which the answer makes. And, again, he does not deny that he understood the object of that suit, nor that it was necessary to the defence to establish Raisbeck's title as a *bona fide* owner of

the bonds and mortgages, for valuable consideration, without notice of the trust, which it was the object of that action to establish in favor of the very persons who, as the complainant in this suit states, then were beneficially interested therein, and whose rights in the premises it was the object of the plaintiff in that action to establish.

The question, therefore, whether Raisbeck was such *bona fide* holder to his own use absolutely, or whether he was merely a trustee, was the great question in the cause, and the complainant in this suit answered that Raisbeck was such *bona fide* owner, and aided in defeating the action brought in the interest of those who, as he says now, were then entitled to a judgment that Raisbeck was but a mere trustee.

From the extraordinary history of arrests and prosecutions contained in the testimony of the complainant, it appears that the complainant (as he says, on Bertrand's advice) began a suit against Raisbeck in New York, by arrest, for the recovery of the amount of the bonds and mortgages, less ten per cent. for commissions, and in it Raisbeck was held to bail in the sum of $25,000. The suit was no further prosecuted, however, but was discontinued. The complainant says that the discontinuance was without his consent, and he adds that Bertrand told him that it was due to the treachery of the complainant's attorney, whom Raisbeck had won over to his interest, as Bertrand alleged, by the bribe of a suit of clothes.

That suit was begun between October and December, 1872. It does not appear that the complainant took any further steps in or in regard to it; but it does appear that, in December, 1872, Raisbeck brought an action on the case against Bertrand and Edwin M. Cook, one of the defendants in this suit, in the Hudson circuit court. In that suit Bertrand and Cook were arrested and put in jail. On the 18th of the last-mentioned month, the complainant began a suit, employing an attorney designated by Bertrand, in the court last mentioned, against Raisbeck, to recover the

money for the bonds and mortgages, and obtained an order for bail in the sum of $25,000 on the *capias* issued whereon Raisbeck was arrested, and the suit was almost immediately ended by an arrangement by which the complainant accepted Cook and Bertrand as bail to the sheriff, and agreed to take an assignment of the bail-bond if special bail should not be put in, and not to rule the sheriff to bring in the body or otherwise hold him responsible in the premises. And thereupon Cook and Bertrand were released. The complainant says he knew Cook and Bertrand were entirely irresponsible, but says the agreement just mentioned was made without his consent or knowledge. It is signed by his attorney in the suit, however. He says that he does not know what became of the suit.

In January, 1873, Raisbeck brought an action against the complainant for damages for false imprisonment in the last-mentioned suit, and obtained an order for $5,000 bail, and, in October, 1873, Cook preferred a charge of perjury against the complainant. After the complainant was discharged from his imprisonment on this charge, Cook sued him for damages for false imprisonment, and caused his arrest in that suit. The complainant was committed to jail, and then Raisbeck and Cook made a charge of subornation of perjury against him, on which he was committed to jail in Newark. No indictment was found against him, but Raisbeck and Bertrand were indicted for conspiracy in that matter. They were convicted and sentenced to imprisonment in the state prison, to which they went accordingly. While they were in prison the complainant began this suit.

The assignments all appear, on their face, to have been made for full value, paid by Raisbeck to the complainant.

The complainant is not entitled to the relief which he seeks. The bill will be dismissed, with costs.